IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| TIAJUANA M. WIGFALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-217 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Tiajuana Wigfall ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I.  BACKGROUND

Plaintiff protectively applied for SSI on October 7, 2010, initially alleging a disability onset date of January 1, 2010 which was later amended to the application date. Tr. ("R."), pp.64-66, 115. The Social Security Administration denied Plaintiff's applications initially, R. at 36, and on reconsideration, R. at 40. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. at 46, and the ALJ held a hearing on October 18, 2012, R. at 297-346.

At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Carroll Crawford, a Vocational Expert ("VE"). Id. On November 14, 2012, the ALJ issued an unfavorable decision. R. at 19-30.

Applying the five-step sequential process required by 20 C.F.R. § 404.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. 416.971 *et seq.*).

2. The claimant has the following severe impairments: obesity, hypertension, diabetes, asthma, depressive disorder, and mild mental retardation (20 C.F.R. 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform medium work[1] as defined in 20 C.F.R. § 416.967(c) except she can frequently climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; she can never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to hazards; she is limited to routine tasks involving no more than simple, short, instructions and simple work-related decisions with few work place changes and only occasional interaction with coworkers (20 C.F.R. § 416.965). The claimant is capable of performing past relevant work as a maid (D.O.T. # 323.687-014, SVP 2, light). This work does not require the performance of work-related activities precluded by the claimant's residual functioning capacity (20 CFR 416.965).

R. at 10-18.

When the Appeals Council denied Plaintiff's request for review, R. at 5-7, the

---

[1]"Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. § 416.967

Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal of the adverse decision.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial

evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ's Finding That Plaintiff Did Not Meet Listing 12.05C Is Supported by Substantial Evidence

Plaintiff argues that she meets Listing 12.05C because of her IQ score and the other physical impairments that the ALJ found under step two of the sequential evaluation process. (See doc. no. 12 (hereinafter "Pl.'s Br."), p. 4.) Plaintiff also contests the ALJ's finding that the record did not demonstrate the requisite deficits in adaptive functioning under Listing 12.05C because of Plaintiff's IQ scores on tests by Easter Seals and Dr. Sperr and her score on "The Street Survival Skills Questionnaire" administered by Easter Seals. See id., pp. 4-5.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the

specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

Listing 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. A claimant generally meets the Listing 12.05(C) criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional

---

[2]Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Thus, to meet Listing 12.05C, there must be a showing of (1) deficits in adaptive functioning; (2) a qualifying IQ score; (3) onset before age 22; and (4) the requisite deficits in work-related functioning. See Perkins., 553 F. App'x at 873 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.05 and Hodges v. Barnhart, 276 F.3d 1265, 1268–69 (11th Cir.2001)).

The ALJ's determination that Plaintiff did not meet Listing 12.05C due to her lack of demonstrated deficits in adaptive functioning is supported by substantial evidence. The ALJ, in supporting this finding, explained that Plaintiff could perform self-care activities, prepare meals on a daily basis, perform many household chores, shop, pay her own bills, attend church on a weekly basis, attend bible study, sing in the choir, play cards with her friends, and use public transportation. R. at 23. The ALJ also discussed Plaintiff's past work history and that she has been able to sustain employment at substantial gainful activity over the course of several years. Id. In sum, the ALJ found that Plaintiff's activities of daily living and work experience precluded the finding of deficits in adaptive functioning required by Listing 12.05C. See Perkins., 553 F. App'x at 873 (affirming ALJ's conclusion that the plaintiff did not meet Listing 12.05C despite an IQ in the required range due to the plaintiff's work experience and daily living activities); Garrett v. Astrue, 244 F.App'x 937, 939 (11th Cir. 2007) (finding no deficits in adaptive functioning where the claimant was "able to cook simple meals; perform chores such as dishwashing and yard work; and build model cars," had daily activities that included "church attendance, television viewing, card playing, and walking in the mall," and testified that "with orientation and instruction, he believed he could return to [unskilled work]."). Because the ALJ extensively discussed and fully

supported her finding that there were not sufficient deficits in adaptive functioning, a clear requirement for Listing 12.05C, the ALJ's decision is supported by substantial evidence.

Plaintiff's arguments concerning her IQ scores are inapposite to the ALJ's finding that she did not meet Listing 12.05C. "A valid IQ score does not have to be conclusive of mental retardation where the IQ score is inconsistent with other record evidence regarding the claimant's daily living activities and behavior." Perkins v. Comm'r, Soc. Sec. Admin., 553 F. App'x 870, 873 (11th Cir. 2014). Here, the ALJ's findings regarding adaptive functioning clearly assume that she met the other requirements of Listing 12.05C, including the requisite IQ score. See R. at 23. The ALJ also noted the IQ score by Dr. Sperr and never discredited it. R. at 26. As deficits in adaptive functioning are an additional requirement alongside a valid IQ score in the necessary range, Plaintiff's argument do not rebut the ALJ's finding, supported by substantial evidence, of insufficient deficits in adaptive functioning.

The ALJ also correctly assessed the evidence from Easter Seals, which included "The Street Survival Skills Questionnaire," when concluding that it showed Plaintiff maintains the basic mental capacity to work. R. at 27. The questionnaire cited by Plaintiff estimates a person's ability to assess time, money, and various measurements and was given as part of a larger vocational evaluation by Easter Seals. R. at 230-231. Plaintiff only showed more than moderate deficits in one category, the ability to read measurements. Id. This vocational evaluation also notably included an opinion that Plaintiff could work as a shirt folder, flatwork folder, laundry assorter, or laundry worker. R. at 234. Other evidence from Easter Seals showed that work tasks assigned to her were excellent in quality and about average in quantity, with minimal supervision needed. R. at 237-238. Plaintiff also was able to follow instructions and respond appropriately

7

to constructive criticism. R. at 239. Easter Seals closed Plaintiff's case file after she successfully completed thirty days of work at a childcare center. R. at 242. Contrary to Plaintiff's contentions, the evidence from Easter Seals, considered as a whole, supports the ALJ's finding that Plaintiff did not demonstrate the requisite deficits in adaptive functioning.

Lastly, Plaintiff's argument that the ALJ unfairly found that she could not have been enrolled in special education is a mischaracterization of the ALJ's findings. The ALJ simply stated that "the objective evidence does not support this allegation, in that the claimant's school district has no record of her being enrolled in special education." R. at 22. Regardless, the ALJ went on to assume that there was onset of the condition prior to age 22 and nevertheless found that the adaptive functioning demonstrated by Plaintiff precluded a finding under Listing 12.05C. As a result, the enrollment of Plaintiff in special education classes is irrelevant to the ALJ's ultimate finding regarding adaptive functioning which is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 4th day of December, 2014, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA